UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| MICHAEL A. DOUGLAS, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) ) | |
| VILLAGE OF PALATINE, a municipal corporation, VILLAGE OF PALATINE DETECTIVES JOSH HESTER, KYLE FRANGIAMORE, MICHAEL CAMPBELL, PHIL HEMMELER, BRIAN LEAL, in their individual capacities, VILLAGE OF MOUNT PROSPECT, a municipal corporation, VILLAGE OF MOUNT PROSPECT SERGEANT RYAN KANE, DETECTIVES WILLIAM RYAN, and RICHARD LABARBERA, in their individual capacities, | ) ) ) ) ) ) ) ) ) ) ) ) ) | No. 17 cv 6207<br><br>Judge Rebecca R. Pallmeyer |
| Defendants. | ) | |

## MEMORANDUM ORDER AND OPINION

In June 2016, Plaintiff Michael Douglas was shot by Detective Josh Hester during an encounter with Defendant police officers in the parking lot of an apartment complex in Palatine, Illinois. Plaintiff claims that the Defendant officers[1] from the Village of Palatine and the Village of Mount Prospect violated his Fourth Amendment rights by using excessive force to effectuate his arrest and by arresting him without probable cause. *See* 42 U.S.C. § 1983. Plaintiff also brings a state law malicious prosecution claim against the Defendant officers and seeks to have Defendant Village of Palatine and Defendant Village of Mount Prospect indemnify their officers for the alleged wrongdoing. Defendants' motions to dismiss are now before the court. For the reasons stated below, the Palatine Defendants and Mount Prospect Defendants' motions to dismiss [63, 66] are granted.

---

[1] Defendants Josh Hester, Kyle Frangiamore, Michael Campbell, and Phil Hemmeler are detectives for the Village of Palatine. Defendant Ryan Kane is a Village of Mount Prospect police sergeant, and Defendants William Ryan and Richard Labarbera are detectives for the Village of Mount Prospect.

1

## BACKGROUND

This suit arises from events on June 16, 2016 leading to the arrest and prosecution of Plaintiff Douglas on charges of aggravated assault, possession of a weapon by a felon, unlawful possession or use of a weapon, and attempted first-degree murder; Douglas was ultimately convicted on all charges except the attempted murder charge. According to the allegations in the complaint, Plaintiff was sitting in his vehicle in the parking lot of an apartment building in Palatine when he was approached by plainclothes officers from both the Village of Mount Prospect Police Department and the Village of Palatine Police Department who had arrived in unmarked vehicles. (Second Am. Compl. [51] ¶¶ 1, 10–11.) The parties' briefs characterize the stop as related to a drug-sting operation. (Pl.'s Palatine Resp. [69] at 5–6; Mount Prospect Defs.' Mot. to Dismiss ("Mount Prospect MTD") [66] at 2.) Plaintiff alleges that he was unarmed and had committed no crimes, but the officers nonetheless approached him with guns drawn and yelled at him to exit his vehicle. (Second Am. Compl. ¶¶ 13, 15.) When Plaintiff did not immediately comply, Defendant Michael Campbell yelled and banged on the driver's-side window of Plaintiff's vehicle, in an alleged attempt to break the window. (*Id.* ¶ 16.) Unable to break the window with the flashlight, Campbell walked to the back of the van he arrived in to look for another tool. (*Id.*) In "fear of his life, safety, and well-being," Plaintiff alleges, he did not exit his vehicle and instead attempted to drive away from the officers. (*Id.* ¶ 17.) Specifically, Plaintiff looked in front and behind his vehicle, saw no officers near him, reversed his vehicle to make room to maneuver, and then drove forward and away from the officers. (*Id.* ¶ 18.) Plaintiff was never close to hitting any of the officers, he alleges, but as Plaintiff "attempted to drive out of harm's way," Defendant Josh Hester shot at least twice and hit Plaintiff's right leg and left knee. (*Id.* ¶ 19.) Other officers watched the shooting but did nothing to prevent it from occurring. (*Id.* ¶ 20.) Plaintiff was taken to the hospital and treated for his injuries. (*Id.* ¶ 21.)

Plaintiff alleges that the Mount Prospect and Palatine officers met at least twice prior to this encounter to prepare for it (*id.* ¶ 14), and that after Plaintiff was shot, they synchronized their

2

stories about what had happened and conspired to cover up the violations of Plaintiff's constitutional rights. (*Id.* ¶ 22.) As part of this agreement, the officers allegedly falsified police reports and their statements with the assistance of Detectives Robert Bice and Martin McCarthy of the Palatine Police Department. (*Id.* ¶ 23.) Brian Leal, also from the Palatine Police Department, allegedly tampered with or destroyed video footage from surveillance cameras that recorded what happened. (*Id.* ¶ 24.) Plaintiff further alleges that the Defendant officers brought false charges against him to hide their own wrongdoing. (*Id.* ¶ 30.)

After the events in the parking lot, Plaintiff was charged with six counts of attempted first-degree murder, two counts of possession of a firearm by a felon, one count of illegally carrying and possessing a firearm, and two counts of aggravated assault with a motor vehicle.[2] (*See* Statement of Conviction & Disposition at 1, Ex. A to Palatine Defs.' Mot. to Dismiss ("Palatine MTD") [65].)[3] After a three-day bench trial, Plaintiff was found guilty of aggravated assault and of the weapons charges, and was found not guilty of attempted murder. (Second Am. Compl. ¶ 32.) Plaintiff is currently incarcerated at the Cook County Jail (*id.* ¶ 31), and state court records show that he has moved for a new trial in the state court, but do not reflect the outcome of that motion. (Statement of Conviction & Disposition at 7.)

---

[2] All parties refer to Plaintiff's conviction under 720 ILCS 5/12-2(c)(8) as aggravated assault on a police officer using a motor vehicle. This section of the law states the elements of assault with a motor vehicle against a person listed in subdivision (b)(4). As of 2016 when Plaintiff was charged, subdivision (b)(4) referred to a "community policing volunteer, private security officer, or utility worker," while subdivision (b)(4.1) referred to a "peace officer, fireman, emergency management worker, or emergency medical services personnel." Prior to the amendments adding subsection (b)(4.1), effective on January 1, 2016, subsection (b)(4) included a "peace officer, community policing volunteer, fireman, private security officer, emergency management worker, emergency medical technician, or utility worker." 2015 Ill. Legis. Serv. P.S. 99-256 (H.B. 3184) (West). It is unclear whether Plaintiff was charged under the older version of the law, or was instead convicted under subsection (b)(4.1), but in any case, Plaintiff was convicted of aggravated assault on an individual performing work duties.

[3] The court may take judicial notice of the certified statement of conviction listing the charges against Plaintiff. *See Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080–82 (7th Cir. 1997) ("[A] district court [may] take judicial notice of matters of public record without converting a motion for failure to state a claim into a motion for summary judgment.").

In this court, Plaintiff alleges that the Palatine and Mount Prospect police officers violated his constitutional rights during the stop and his arrest. Counts I and II of his Second Amended Complaint allege that the officers used excessive force in making the arrest in violation of the Fourth Amendment. In Counts III and IV, claims for false arrest, Plaintiff alleges that he was arrested without probable cause in violation of the Fourth Amendment. Counts V and VI allege that the police officers failed to intervene to prevent the violation of his constitutional rights. Counts VII and VIII allege that the officers conspired to violate Plaintiff's constitutional rights. Counts IX and X are state law claims for malicious prosecution, alleging that the police officers' purpose in initiating a prosecution against Plaintiff was to cover up their own wrongdoing. Plaintiff also asserts that the Village of Palatine and the Village of Mount Prospect must indemnify their agents for the alleged constitutional violations pursuant to 745 ILCS 10/9-102. Defendants now move to dismiss Plaintiff's complaint, arguing that Plaintiff's criminal conviction bars this action.

## **LEGAL STANDARD**

In deciding a motion to dismiss, the court accepts the well-pleaded factual allegations in the complaint as true and draws all reasonable inferences in favor of the plaintiff. *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016). The court may consider the complaint, "documents that are attached to the complaint, documents that are central to the complaint and referred to in it, and information that is properly subject to judicial notice." *Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013). The court may also take judicial notice of matters in the public record. *See Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 556 (7th Cir. 2012); FED. R. EVID. 201(b). Such matters include public court documents, *see White v. Keely*, 814 F.3d 883, 885 n.2 (7th Cir. 2016), and "proceedings in other courts, both within and outside of the federal system, if the proceedings have a direct relation to matters at issue." *Opoka v. Immigration and Naturalization Serv.*, 94 F.3d 392, 394 (7th Cir. 1996) (quoting *Philips Med. Sys. Int'l v. Bruetman*, 982 F.2d 211, 215 n.2 (7th Cir. 1992)). The court does not accept as true allegations of the complaint that are contradicted by judicially-noticed facts from the public record. *See Purnell v.*

*McCarthy*, No. 14 C 2530, 2017 WL 478301, at *1 (N.D. Ill. Feb. 6, 2017) (citing Wright & Miller, FEDERAL PRACTICE & PROCEDURE § 1363 at 464–65 (3d ed. 2013)).

## **DISCUSSION**

I. **Excessive Force (Counts I and II)**

    A. **Mount Prospect Defendants are Dismissed**

In Counts I and II, Plaintiff alleges that all individually-named Palatine and Mount Prospect Defendant police officers used excessive force against him in violation of the Fourth Amendment. In response to the Mount Prospect Defendants' motion to dismiss, however, Plaintiff concedes that his complaint does not allege sufficient involvement by the Mount Prospect Defendants for them to be liable under 42 U.S.C. § 1983. (Pl.'s Mount Prospect Resp. [71-3] at 6.) Plaintiff further concedes that Josh Hester was the only officer who used excessive force against him. (*Id.*) The Mount Prospect Defendants also note that in a June 2019 letter, Plaintiff's counsel expressed Douglas's intention to voluntarily dismiss Count II of the Amended Complaint. (Mount Prospect MTD at 5 n.2.) Plaintiff has not yet done so, but because Plaintiff concedes that only Defendant Hester used excessive force, Count I is dismissed against Defendants Frangiamore, Campbell, Hemmeler, and Leal, and Count II is dismissed in its entirety.

    B. **Plaintiff's Excessive Force Claim is Barred by *Heck v. Humphrey***

As against the remaining Defendant Josh Hester, the Palatine Defendants argue, in addition, that the excessive force claim is barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). Under the holding in that case, a plaintiff may not sue for damages under 42 U.S.C. § 1983 if his claim rests on a version of events that negates the basis for his still-valid conviction. *See Tolliver v. City of Chicago*, 820 F.3d 237, 239 (7th Cir. 2016). "[W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate the conviction or sentence has already been invalidated." *Heck*, 512 U.S. at 487; *see also Viramontes v. City of Chicago*, 840 F.3d 423, 427–

28 (7th Cir. 2016). Even if the plaintiff does not intend to challenge his conviction, "if he makes allegations that are inconsistent with the conviction's having been valid, *Heck* kicks in and bars his civil suit." *Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003).

This doctrine does not mean that a person convicted of assaulting a police officer may never bring an action for excessive force arising from the confrontation. Such a claim could proceed "so long as the § 1983 case does not undermine the validity of the criminal conviction." *Hardrick v. City of Bolingbrook*, 522 F.3d 758, 762 (7th Cir. 2008). For example, "a suit for excessive force that occurred after the crime was complete" is permissible. *Tolliver*, 820 F.3d at 244; *see also Gilbert v. Cook*, 512 F.3d 899, 901 (7th Cir. 2008) ("Otherwise guards (and for that matter any public employee) could maul anyone who strikes them, without risk of civil liability as long as the private party is punished by criminal prosecution or prison discipline for the initial wrong."). Because police may use only "reasonable" force in effectuating an arrest, *see Graham v. Connor*, 490 U.S. 386, 396–97 (1989); *Phillips v. Cmty. Ins. Corp.*, 678 F.3d 513, 519–20 (7th Cir. 2012), a plaintiff may allege that "the degree of force applied was unreasonable," even if the plaintiff struck first. *Hemphill v. Hopkins*, No. 08 CV 0157, 2011 WL 6155967, at *2 (N.D. Ill. Dec. 12, 2011).

A claim that is theoretically compatible with the underlying conviction may nonetheless be *Heck*-barred "if specific factual allegations in the complaint are necessarily inconsistent with the validity of the conviction." *McCann v. Neilsen*, 466 F.3d 619, 621 (7th Cir. 2006). In *Moore v. Mahoney*, the Seventh Circuit affirmed that a prisoner convicted of battery of correctional officers could not allege, in a claim that those officers used excessive force against him, that he had committed no battery that would justify any use of force by the officers (instead claiming that he swatted away an unknown hand and then stood up before being tackled by officers). 652 F.3d 722, 724–25 (7th Cir. 2011). Similarly, in *Tolliver v. City of Chicago*, the plaintiff—despite pleading guilty to aggravated battery of a police officer based on a stipulation that he had driven his vehicle towards an officer—claimed in his civil case that he was paralyzed except for his "eyeballs" and

6

the car, through no voluntary action of his own, rolled toward the police officer who then shot plaintiff. 820 F.3d at 243–44. Because one cannot be convicted of aggravated battery unless one acted voluntarily, and knowingly or intentionally, the plaintiff's claim that the officers used excessive force was based on factual allegations that were barred by *Heck*. *Id.* at 244.

Plaintiff's claim for excessive force in this case relies on allegations that are inconsistent with the facts supporting his conviction. *See Purnell*, 2017 WL 478301, at *3. Plaintiff Douglas was convicted after a bench trial of aggravated assault with a motor vehicle, 720 ILCS 5/12-2(c)(7)–(8), unlawful use of weapons, 720 ILCS 5/24-1(a)(4), and unlawful possession of a weapon by a felon, 720 ILCS 5/24-1.1(a), and has not alleged that these convictions have been invalidated.[4] *See Heck*, 512 U.S. at 486–87 ("[A] § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254."). In this court, Plaintiff alleges that he was unarmed and posed no threat to others when the police officers pointed their guns at him and yelled for him to exit his vehicle.[5] (Second Am. Compl. ¶¶ 9, 13, 15.) Plaintiff claims that he did not exit his vehicle because he was afraid for his life and safety, and that he observed that there "were no officers behind or in front of his vehicle" before he "backed up to make room, [and] tried to drive forward and away from the officers." (*Id.* ¶¶ 17–18.) Plaintiff claims that he never

---

[4] Although the court need not reach the issue, it notes Plaintiff may not allege that he was unarmed during the encounter. (*See* Second Am. Compl. ¶ 13.) Such a claim cannot be reconciled with his convictions on weapons charges, which require knowing possession of a firearm. *See* 720 ILCS 5/24-1(a)(4) ("A person commits the offense of unlawful use of weapons when he knowingly [c]arries or possesses in any vehicle or concealed on or about his person . . . any pistol, revolver, stun gun or taser or other firearm . . . ."); 720 ILCS 5/24-1.1(a) ("It is unlawful for a person to knowingly possess on or about his person . . . any firearm . . . if the person has been convicted of a felony under the laws of this State or any other jurisdiction.").

[5] Plaintiff alleges that the officers arrived in unmarked vehicles and wore plain clothing, but does not allege that he did not know they were police officers. (Second Am. Compl. ¶¶ 10–11.) Such a claim would be inconsistent with his conviction of assaulting a police officer because that conviction requires knowledge that the individual assaulted was a police officer.

7

hit nor came close to hitting any of the officers, and "as he attempted to drive out of harm's way," Defendant Hester shot him. (*Id.* ¶ 19.)

Plaintiff's account, however, is inconsistent with the findings of fact necessary to his conviction for aggravated assault on a police officer. In Illinois, a "person commits aggravated assault when, in committing an assault, he . . . [w]ithout justification operates a motor vehicle in a manner which places a person . . . in reasonable apprehension of being struck by the moving motor vehicle." 720 ILCS 5/12-2(c)(8).[6] Conviction of an assault requires knowing conduct. *See* 720 ILCS 5/12-1. As in *Tolliver*, 820 F.3d at 244, Plaintiff's current version of the events "negates the mental state necessary to support his conviction," because the judge could not have found that Plaintiff *knowingly* operated a vehicle in a way that placed someone in reasonable apprehension of being struck if, as Plaintiff alleges, there were no officers in front of his vehicle when he attempted to drive away. Plaintiff's account also negates the offense's conduct requirement; the judge could not have found that Plaintiff operated his vehicle in a way such that anyone was "in reasonable apprehension of being struck by [Plaintiff's] moving vehicle" if, as Plaintiff alleges, his vehicle was "never close to any of the officers" and he "posed absolutely no threat to any Defendant or anyone else." (Second Am. Compl. ¶¶ 13, 19.) Plaintiff's complaint presents an account of the events on June 16, 2016 in which he carefully navigated his vehicle away from the police officers in an attempt to get to safety, and Officer Hester, unprovoked, responded by firing at least two shots at him. These factual claims "necessarily imply the invalidity of the criminal conviction." *Tolliver*, 820 F.3d at 243; *see also Purnell*, 2017 WL 478301, at *5. "[C]omplaints must be dismissed if they fail to state a 'plausible' basis for relief." *Moore*, 652 F.3d at 725. Plaintiff's excessive force claim fails because he now claims to have been the victim of an unprovoked use of deadly force, "and while that conceivably is true, it is barred by *Heck*." *Id.*

---

[6] Plaintiff was also convicted under 720 ILCS 5/12-2(c)(7), which is the same as a conviction under 720 ILCS 5/12-2(c)(8), except that the person who is placed in reasonable apprehension of being struck is not a person listed in subdivision (b)(4). (*See* note 2, *supra*.)

8

## C. The Officers are Entitled to Qualified Immunity

Although not necessary to this decision, the court agrees that the officers would likely be entitled to qualified immunity from Plaintiff's excessive force claim. The doctrine of qualified immunity protects government officials from liability if "the facts alleged, taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a constitutional right," and "the right was clearly established at the time of its alleged violation." *Becker v. Elfreich*, 821 F.3d 920, 925 (7th Cir. 2016) (internal quotations and alterations omitted); *see also Pearson v. Callahan*, 555 U.S. 223, 231 (2009). It is clearly established that "a police officer may not use excessive force in arresting an individual." *Holmes v. Vill. of Hoffman Estates*, 511 F.3d 673, 687 (7th Cir. 2011). But whether the use of force in a specific situation is excessive, that is, "greater [ ] than was reasonably necessary to make the arrest," depends on "the totality of the circumstances at the time of the arrest." *Becker*, 821 F.3d at 925 (quotation omitted). The court "must analyze the actions of the officer from the objective perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Tolliver*, 820 F.3d at 246 (citing *Scott v. Edinburg*, 346 F.3d 752, 756 (7th Cir. 2003)). When a police officer "has probable cause to believe that the suspect poses a threat of serious physical harm, either to the officer or to others, it is not constitutionally unreasonable to prevent escape by using deadly force, and if, where feasible, some warning has been given."[7] *Tennessee v. Garner*, 471 U.S. 1, 11–12 (1985). A suspect poses a risk of serious physical harm if he "threatens the officer with a weapon," and "an automobile may be used as a deadly weapon." *Tolliver*, 820 F.3d at 245 (citing *Scott*, 346 F.3d at 757).

Plaintiff argues that the officers are not entitled to qualified immunity because he had a clearly established right to be free from unreasonable searches and seizures. (Pl.'s Palatine

---

[7] Plaintiff alleges that the police officers "got out of their vehicles with guns pointed at Plaintiff and yelled at him to get out [of] his vehicle." (Second Am. Compl. ¶ 15.) This indicates that some warning was given prior to Officer Hester's use of deadly force. *See Ybarra v. City of Chicago*, 946 F.3d 975, 980 (7th Cir. 2020).

9

Resp. at 4.) But qualified immunity cannot be overcome "simply by alleging a violation of extremely abstract rights." *Dockery v. Blackburn*, 911 F.3d 458, 466 (7th Cir. 2018) (alterations omitted) (quoting *White v. Pauly*, 137 S. Ct. 548, 552 (2017)). Plaintiff also contends that the officers' conduct was so egregious that they are not entitled to qualified immunity. Instead, he claims, reasonable officers would have "stepped away from Douglas's vehicle the minute they heard the gears shift and he backed into reverse." (Pl.'s Palatine Resp. at 5; Pl.'s Mount Prospect Resp. at 6.) But that is not what the Fourth Amendment requires. *See Scott*, 346 F.3d at 760 ("We do not believe that the Fourth Amendment requires the use of the least or even a less deadly alternative so long as the use of deadly force is reasonable under *Tennessee v. Garner* and *Graham v. Connor*.") (alteration omitted) (quoting *Plakas v. Drinski*, 19 F.3d 1143, 1149 (7th Cir. 1994)).

Based on Plaintiff's still-valid conviction for aggravated assault of a police officer, Plaintiff's vehicle must have been moving toward Officer Hester in such a way that Officer Hester reasonably believed he would be hit. A reasonable officer in the same circumstances "would have perceived the car as a deadly weapon that created a threat of serious physical harm." *Tolliver*, 820 F.3d at 246. Plaintiff was also convicted of aggravated assault of a person other than a police officer, 720 ILCS 5/12-2(c)(7), meaning that an officer in Hester's position could have reasonably believed that others in the parking lot of the apartment complex where this occurred were endangered by Plaintiff's conduct. *See Sherrod v. Berry*, 856 F.2d 802, 805 (7th Cir. 1988) ("[W]hen an officer believes that a suspect's actions [place] him, his partner, or those in the immediate vicinity in immediate danger of death or serious bodily injury, the officer can reasonably exercise the use of deadly force."). The pleadings do not make clear how fast Plaintiff was driving, but given the charge that Plaintiff's conduct placed Officer Hester "in reasonable apprehension of being struck by [Plaintiff's] moving motor vehicle," 720 ILCS 5/12-2(c)(8), Officer Hester did not have long to react. Nor did Officer Hester have any way to know whether Plaintiff would hit him or another person or vehicle as Plaintiff attempted to escape through the parking

lot. From the allegations in the complaint, Officer Hester shot twice as Plaintiff was driving and before the vehicle had stopped moving. That is, Officer Hester fired before the threat posed by Plaintiff had passed. *Tolliver*, 820 F.3d at 246.

For purposes of the qualified-immunity inquiry, a defendant has not violated a clearly established right unless "the contours of the right [were] sufficiently clear that a reasonable official would understand that what he [was] doing violate[d] the right." *Becker*, 821 F.3d at 928. "[T]he very action in question" need not have "previously been held unlawful, but . . . in light of pre-existing law the unlawfulness must be apparent." *Becker*, 821 F.3d at 928 (quoting *Anderson v. Creighton*, 482 U.S. 635, 640 (1987)). That is, the "clearly established law must be 'particularized' to the facts of the case." *White*, 137 S. Ct. at 552 (quoting *Anderson*, 482 U.S. at 640).

Courts have found police officers entitled to qualified immunity in circumstances similar to this case. For example, the Supreme Court held that a police officer was entitled to qualified immunity when she shot a suspect "in the back as he attempted to flee from law enforcement authorities in his vehicle," and "when persons in the immediate area [were] at risk from that flight." *Brosseau v. Haugen*, 543 U.S. 194, 194, 200 (2004). The officer pointed her gun at the suspect and ordered him to exit his vehicle, but he ignored her command. *Id.* at 196. The officer then "repeated her commands and hit the driver's side window several times with her handgun," but the suspect continued attempting to start the vehicle, and eventually succeeded. *Id.* As the suspect's vehicle began to move, the police officer "jumped back," and "fired one shot through the rear diver's side window, . . . hitting [the suspect] in the back." *Id.* at 196–97. The Court did not decide whether the suspect's constitutional rights were violated, but did observe that the reasonableness of the use of deadly force in response to vehicular flight is a matter "in which the result depends very much on the facts of each case." *Id.* at 201. Thus, the case did not present a situation in which clearly established law prohibited the officer's actions. *Cf. Scott*, 346 F.3d at 758–60 (concluding that an officer's conduct was reasonable under the Fourth Amendment when

he fatally shot a man who had stolen the officer's car as he was fleeing at a high speed through a gas station parking lot where other patrons were present).

In this case, too, the contours of the right that Officer Hester allegedly violated were not "sufficiently clear that a reasonable official would understand that what he [was] doing violate[d] the right." *Becker*, 821 F.3d at 928. Plaintiff was driving in a manner threatening to Officer Hester's safety and to that of others in the parking lot. The Seventh Circuit's decision that the officers in *Tolliver* were entitled to qualified immunity confirms that the relevant law has not materially changed between 2004, when *Brosseau* was decided, and 2016, when Plaintiff was shot while acting similarly to the plaintiff in *Tolliver*. *Tolliver*, 820 F.3d at 246; *see also Ybarra*, 946 F.3d at 980–81. Plaintiff has not directed the court to any decisions suggesting otherwise. *See Green v. Newport*, 868 F.3d 629, 633 (7th Cir. 2017) ("The plaintiff bears the burden of demonstrating that a right was clearly established at the time the alleged violation occurred."). In sum, regardless of the court's finding that *Heck* bars Plaintiff's excessive force claim, the officers are entitled to qualified immunity.

## II. False Arrest (Counts III and IV)

### A. Plaintiff is Barred by *Heck* from Arguing that the Officers Lacked Probable Cause for His Arrest

If there was probable cause to arrest Plaintiff, his claim for false arrest fails as a matter of law. *Hart v. Mannina*, 798 F.3d 578, 587 (7th Cir. 2015) (citing *Mustafa v. City of Chicago*, 442 F.3d 544, 547 (7th Cir. 2006) ("Probable cause to arrest is an absolute defense to any claim under Section 1983 against police officers for wrongful arrest, false imprisonment, or malicious prosecution.")). "Police officers have probable cause to arrest when the totality of the facts and circumstances within their knowledge at the time of the arrest would warrant a reasonable person in believing the person has committed a crime." *Hart*, 798 F.3d at 587. An officer need not be certain, because probable cause is a "fluid concept that relies on the common-sense judgment of

the officers based on the totality of the circumstances." *Id.* (quoting *United States v. Reed*, 443 F.3d 600, 603 (7th Cir. 2006)).

Plaintiff's false arrest claim is not necessarily barred by *Heck* because "one can have a successful wrongful arrest claim and still have a perfectly valid conviction." *Neely v. Garza*, No. 15 C 407, 2017 WL 959014, at *6 (N.D. Ill. Mar. 13, 2017) (quoting *Wiley v. City of Chicago*, 361 F.3d 994, 997 (7th Cir. 2004)). But when "the grounds for conviction flow from the same facts underlying the allegations of false arrest, the claim is barred by *Heck*." *Neely*, 2017 WL 959014, at *6 (quoting *Szach v. Vill. of Lindenhurst*, No. 14 C 7441, 2015 WL 3964237, at *6 (N.D. Ill. June 25, 2015)). Here, as well, Plaintiff's claim runs into the *Heck* bar because he was convicted of "the very behavior that would have constituted probable cause for [his] arrest." *Chriswell v. Vill. of Oak Lawn*, No. 11 C 00547, 2013 WL 5903417, at *7 (N.D. Ill. Nov. 4, 2013), *aff'd sub nom. Chriswell v. O'Brien*, 570 F. App'x 617 (7th Cir. 2014). Plaintiff was convicted of aggravated assault as a result of driving his vehicle toward a police officer; that is, Plaintiff was arrested for illegal conduct that he committed in the presence of the officers. *See Atwater v. City of Lago Vista*, 532 US. 318, 354 (2001) ("If an officer has probable cause to believe that an individual has committed even a very minor criminal offense in his presence, he may, without violating the Fourth Amendment, arrest the offender."). Plaintiff cannot argue here that his conduct, which the state judge found sufficient to convict him of aggravated assault, gave the officers no reason to believe that he had committed a crime.

Notably, "probable cause to believe that a person has committed *any* crime will preclude a false arrest claim, even if the person was arrested on additional or different charges for which there was no probable cause." *Holmes*, 511 F.3d at 682. Accordingly, for purposes of his false arrest claim, it is immaterial that Plaintiff was subsequently acquitted of the attempted murder charges, because his conduct gave officers reason to believe that at least one crime, here assault, had been committed in their presence. *Cf. Duncan v. Fapso*, 216 F. App'x 588, 590 (7th Cir. 2007) (finding that a police officer had probable cause to arrest a suspect even though the officer

announced that the arrest was for possession of drug paraphernalia and a state court ruled that the search leading to discovery of the paraphernalia was illegal, because the officer had personally observed the suspect trespassing on a privately-owned railway right-of-way).

Plaintiff also argues that he is entitled to damages for false arrest because the officers had no probable cause to make the initial stop. (*See* Second Am. Compl. ¶¶ 42, 46.) The Mount Prospect Defendants note that the state judge found during a bench trial that the officers had probable cause to stop Plaintiff.[8] (Mount Prospect MTD at 8.) Even absent such a finding, an argument that Plaintiff did not engage in any conduct that would have given officers probable cause to arrest him is barred by *Heck,* and "probable cause to believe that a person has committed *any* crime will preclude a false arrest claim." *Holmes*, 511 F.3d at 682. More to the point, "the fact that the evidence" that provided officers with probable cause to arrest "was the fruit of an illegal detention does not make it any less relevant to establishing probable cause for the arrest because the exclusionary rule does not apply in a civil suit under § 1983 against police officers." *Martin v. Marinez,* 934 F.3d 594, 599 (7th Cir. 2019). Thus in *Martin*, the court found that the plaintiff's "claim for false arrest [could] not succeed because it is undisputed that officers discovered an illegal handgun and cocaine in Martin's vehicle, which gave them probable cause for his arrest, notwithstanding the previous unlawful stop." *Id.* at 598. Similarly here, because Plaintiff's conviction for aggravated assault necessarily implies that he operated a motor vehicle in a manner that placed a person "in reasonable apprehension of being struck by [his] moving

---

[8] The Mount Prospect Defendants attach to their motion to dismiss a transcript of the proceedings on the day of Plaintiff's state court trial when the judge found him guilty of aggravated assault and weapons charges and acquitted him of the charges for attempted murder. (*See* Trial Tr., Ex. C to Palatine MTD.) The transcript shows that the judge made an express finding that the officers "had probable cause to go there and effect an arrest of the defendant," and that "they did not need an arrest warrant" or "a search warrant." (Trial Tr. at 173.) Plaintiff disputes the authenticity of the transcript and also argues that he is not precluded by collateral estoppel from asserting that the officers had no probable cause to stop him because that finding is *dicta*. (Pl.'s Mount Prospect Resp. at 8–10.) The court can resolve the question of probable cause on other grounds, so need not address these issues.

motor vehicle," 720 ILCS 5/12-2(c)(8), *Heck* bars Plaintiff from arguing that the officers did not have probable cause to arrest him, even had the initial stop been unlawful.

To the extent that Plaintiff contends that the initial stop was itself an illegal arrest (*see* Second Am. Compl. ¶¶ 42, 46), the court notes that the factual allegations do not support that contention. An arrest is a "seizure" under the Fourth Amendment, and a "person is 'seized' when his or her freedom of movement is restrained by intentionally applied physical force or submission to an assertion of authority." *Abbott v. Sangamon Cty., Ill.*, 705 F.3d 706, 719 (7th Cir. 2013) (citing *California v. Hodari D.*, 499 U.S. 621, 624 (1991)). A seizure "rises to the level of an arrest 'when a reasonable person in the suspect's position would have understood the situation to constitute a restraint on freedom of movement of the degree which the law associates with formal arrest.'" *Abbott*, 705 F.3d at 719 (quoting *Ochana v. Flores*, 347 F.3d 266, 270 (7th Cir. 2003)). Plaintiff alleges that the officers "got out of their vehicles with guns pointed at Plaintiff and yelled at him to get out [of] his vehicle." (Second Am. Compl. ¶ 15.) Detective Campbell then "yelled and banged on Plaintiff's driver's side window with his flashlight." (*Id.* ¶ 16.) This order and Campbell's conduct "did not constitute an arrest because it was an assertion of authority to which [Plaintiff] did not submit." *Abbott*, 705 F.3d at 720. Instead, Plaintiff alleges that he "did not exit his vehicle" and "attempted to drive out of harm's way." (Second Am. Compl. ¶¶ 17–19.) Indeed, Plaintiff did not submit to the officers' assertion of authority, nor was his freedom of movement terminated, until sometime after he was shot by Officer Hester. (*Id.* ¶¶ 19–21.) Accordingly, Plaintiff was not yet arrested at the time of the initial stop of his vehicle.

**B.     The Officers are Entitled to Qualified Immunity**

On Plaintiff's false arrest claim, as well, all of the Defendant police officers would be entitled to qualified immunity. As discussed in Section I.B, *supra*, qualified immunity protects the police officers "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Tolliver*, 820 F.3d at 244–45 (quoting *Pearson*, 555 U.S. at 231). "The probable-cause standard

inherently allows room for reasonable mistakes, [and] qualified immunity affords an added layer of protection by shielding officers from 'suit for damages if a reasonable officer could have believed the arrest to be lawful, in light of clearly established law and the information the arresting officers possessed.'" *Abbott*, 705 F.3d at 714 (alterations omitted) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)). This is referred to as "arguable probable cause," and qualified immunity "protects officers who reasonably but mistakenly believe that probable cause exists." *Abbott*, 705 F.3d at 714–15. As discussed above, the officers observed Plaintiff engage in the conduct that ultimately resulted in his conviction for aggravated assault using a motor vehicle. Personally observing this conduct, and in Officer Hester's case being the victim of this conduct, would give a reasonable officer arguable probable cause to arrest Plaintiff for assault. The officers are entitled to qualified immunity on Plaintiff's false arrest claim.

## III.     State Law Malicious Prosecution (Counts IX and X)

The court's subject-matter jurisdiction over Plaintiff's complaint was based on the presence of a federal question, but because the court dismissed Douglas's § 1983 claims, there is no longer a basis for federal-question jurisdiction. Normally, the court would not exercise supplemental jurisdiction over Plaintiff's remaining state-law malicious prosecution claim and would dismiss it without prejudice. *See Al's Serv. Ctr. v. BP Prods. N. Am., Inc.*, 599 F.3d 720, 727 (7th Cir. 2010) ("When all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims, which the plaintiff can then prosecute in state court."). Three factors, however, weigh in favor of the court's exercise of supplemental jurisdiction here. *See Wright v. Associated Ins. Cos. Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994) ("[A] district court should consider and weigh the factors of judicial economy, convenience, fairness, and comity in deciding whether to exercise jurisdiction over pendent state-law claims."). This case was filed in 2017 and the malicious prosecution claim is both fully briefed and largely related to the issues in Plaintiff's federal claims. Should Plaintiff believe he has a basis for filing a third amended complaint, the court "deems it

prudent to consider the merits of Defendants' motion to dismiss the existing state law [malicious prosecution claim]." *Gonzalez v. City of Chicago*, No. 16 CV 8012, 2018 WL 1561735, at *5 n.5 (N.D. Ill. Mar. 30, 2018).

To establish a claim for malicious prosecution under Illinois law, a plaintiff must establish: "(1) commencement of criminal proceedings by the defendants; (2) termination of the matter in favor of the plaintiff; (3) the absence of probable cause for the proceedings; (4) the presence of malice; and (5) resulting damages." *Williams v. City of Chicago*, 733 F.3d 749, 759 (7th Cir. 2013). Malicious prosecution is offense-specific. *Id.* While a "finding of probable cause is an absolute bar to" a claim of malicious prosecution, *Holmes*, 511 F.3d at 682; *see also Swick v. Liautaud*, 169 Ill. 2d 504, 512, 662 N.E.2d 1238, 1242 (Ill. 1996), probable cause as to one charge, even one resulting in conviction, "will not bar a malicious prosecution claim based on a second, distinct charge as to which probable cause was lacking." *Holmes*, 511 F.3d at 682; *see also Joiner v. Benton Cmty. Bank*, 82 Ill. 2d 40, 45, 411 N.E.2d 229, 2232 (Ill. 1980) ("[T]he settled law bars a malicious prosecution action predicated upon criminal proceedings which were terminated in a manner not indicative of the innocence of the accused."). Accordingly, Plaintiff's conviction on aggravated assault and weapons charges would not by itself preclude a claim that he was maliciously prosecuted on the six charges of attempted murder of which he was acquitted.

As discussed above, an officer has probable cause to arrest "when the totality of the facts and circumstances within their knowledge at the time of the arrest would warrant a reasonable person in believing the person has committed a crime." *Hart*, 798 F.3d at 587. This "requires more than bare suspicion but need not be based on evidence sufficient to support a conviction, nor even a showing that the officer's belief is more likely true than false." *Woods v. City of Chicago*, 234 F.3d 979, 996 (7th Cir. 2000). Plaintiff contends that officers lacked probable cause to charge him with attempted murder, but the court disagrees. A person commits an attempt crime "when, with intent to commit a specific offense, he or she does any act that constitutes a substantial step toward the commission of that offense." 720 ILCS 5/8-4(a). Under Illinois law,

(a) A person who kills an individual without lawful justification commits first degree murder if, in performing the acts which cause the death:
   (1) he or she either intends to kill or do great bodily harm to that individual or another, or knows that such acts will cause death to that individual or another; or
   (2) he or she knows that such acts create a strong probability of death or great bodily harm to that individual or another; or
   (3) he or she is attempting or committing a forcible felony[9] other than second degree murder.

720 ILCS 5/9-1(a)(1). In this case, the conduct underlying the charges of aggravated battery against Plaintiff was identical to the conduct underlying the attempted murder charges. The difference is the *mens rea* requirement. For purposes of aggravated assault, Plaintiff needed to have acted knowingly, *see* 720 ILCS 5/12-1; to be convicted of attempted murder, he must have intended to kill someone. *See* 720 ILCS 5/8-4(a). A police officer observing Plaintiff driving a vehicle toward him could not have known with certainty Plaintiff's mental state. But probable cause does not require certainty, nor even that the "officer's belief is more likely true than false." *Woods*, 234 F.3d at 996. And a reasonable officer in the position of Officer Hester, seeing Plaintiff drive a car toward him, could reasonably believe that Plaintiff intended to kill him. *See Hart*, 798 F.3d at 587; *Tolliver*, 820 F.3d at 245 ("[A]n automobile may be used as a deadly weapon."). Accordingly, the officers had probable cause to believe that Plaintiff attempted to kill Officer Hester with his vehicle, which bars Plaintiff's claim that he was maliciously prosecuted. *Holmes*, 511 F.3d at 682.

In their reply brief, the Mount Prospect Defendants argue that they did not arrest or charge Plaintiff with any offense (Mount Prospect Defs.' Reply [77] at 9), and thus cannot be said to have initiated the prosecution for purposes of Plaintiff's malicious prosecution claim. *See Williams*, 733 F.3d at 759–60. This specific assertion did not appear until Mount Prospect's reply brief and will therefore not form the basis of the court's decision to dismiss Plaintiff's malicious prosecution

---

[9] Under Illinois law, *see* 720 ILCS 5/2-8, a "forcible felony" means: "treason, first degree murder, second degree murder, . . . and any other felony which involves the use or threat of physical force or violence against any individual."

claim. *See Meinders v. UnitedHealthcare, Inc.*, 800 F.3d 853, 858 (7th Cir. 2015) ("Due process . . . requires that a plaintiff be given an opportunity to respond to an argument or evidence raised as a basis to dismiss his or her claims."). Because Plaintiff's malicious prosecution claim otherwise fails as a matter of law, however this claim is dismissed as against all Defendants.

### IV.  Conspiracy (Counts VII and VIII), Failure to Intervene (Counts V and VI), Indemnification

Douglas's claims that the Defendants conspired to deprive him of his constitutional rights (Counts VII and VIII) and failed to intervene to prevent a deprivation of his constitutional rights (Counts V and VI) depend on proof of an underlying constitutional violation. *Coleman v. City of Peoria,* 925 F.3d 336, 351 (7th Cir. 2019) (citing *Daugherty v. Page*, 906 F.3d 606, 612 (7th Cir. 2018) (conspiracy); *Gill v. City of Milwaukee*, 850 F.3d 335, 342 (7th Cir. 2017) (failure to intervene)). Plaintiff's indemnification claims pursuant to 745 ILCS 10/9-102 against the Village of Palatine and the Village of Mount Prospect depend on a finding that the Defendant police officers are liable on the underlying claims. *See* 745 ILCS 10/9-102 ("A local public entity is empowered and directed to pay any tort judgment or settlement for compensatory damages . . . for which *it or an employee while acting within the scope of his employment is liable* in the manner provided in this Article.") (emphasis supplied); 745 ILCS 10/2-109 ("A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable."). Because Plaintiff has failed to allege an underlying constitutional violation, Defendants' motions to dismiss are granted on these derivative claims as well.

### V.  Claims Against Defendant William Ryan

The Mount Prospect Defendants urge the court to dismiss all claims against Defendant William Ryan with prejudice because Plaintiff has not sufficiently alleged that Ryan was present at the scene of Plaintiff's arrest and shooting and Plaintiff has already been given one opportunity to amend his complaint to allege Defendant Ryan's involvement. (*See* Order on Def. Ryan's Mot. to Dismiss [50] (granting Defendant William Ryan's motion to dismiss without prejudice and

granting Plaintiff leave to file an amended complaint).) Indeed, Defendant Ryan is not listed among the officers that arrived at the parking lot of the apartment building on June 16, 2016 in the unmarked vehicles. (*See* Second Am. Compl. ¶¶ 10–11.) Although he is listed by name in the allegations related to Plaintiff's conspiracy claim (*see id.* ¶ 2c2), failure to intervene claim (*id.* ¶ 26), and false arrest claim (*id.* ¶¶ 42, 45), Plaintiff offers no detail in support of his allegation that all of the Defendants (presumably including Ryan) seized Plaintiff for an excessive period of time, met prior to the encounter to prepare, exited the vehicles with guns pointed at Plaintiff, and watched Officer Hester shoot without intervening. (*Id.* ¶¶ 12–20.) Because the court is dismissing claims against all Defendants for other reasons, it need not address the matter further beyond observing the allegations are not sufficient to put Defendant Ryan on notice of the claims against him.

## **CONCLUSION**

Because the factual allegations in Plaintiff's Second Amended Complaint that could potentially entitle Plaintiff to relief are inconsistent with the validity of his criminal convictions, *see Heck v. Humphrey*, Plaintiff has failed to state a claim on which relief can be granted. Accordingly, the Village of Palatine Defendants and the Village of Mount Prospect Defendants' motions to dismiss [63, 66] are granted. Plaintiff has leave to file an amended complaint, if he can do so consistent with Rule 11, within 45 days.

ENTER:

Date: March 26, 2020

_____
REBECCA R. PALLMEYER
United States District Judge