UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| **MICHAEL A. DOUGLAS,** )<br>)<br>**Plaintiff,** )<br>)<br>v. )<br>)<br>**VILLAGE OF PALATINE, a municipal** )<br>**corporation, VILLAGE OF PALATINE** )<br>**DETECTIVES JOSH HESTER, BADGE #213,** )<br>**KYLE FRANGIAMORE, BADGE #151,** )<br>**MICHAEL CAMPBELL, BADGE #212, PHIL** )<br>**HEMMELER, BADGE #115, ROBERT BICE,** )<br>**in their individual capacities, VILLAGE OF** )<br>**MOUNT PROSPECT, a municipal** )<br>**corporation, VILLAGE OF MOUNT** )<br>**PROSPECT SERGEANT RYAN KANE,** )<br>**BADGE #739, DETECTIVES WILLIAM RYAN,** )<br>**BADGE #264, and RICHARD LABARBERA,** )<br>**BADGE #234, in their individual capacities.** )<br>)<br>**Defendants.** ) | **No. 17 C 6207**<br><br>**Judge Rebecca R. Pallmeyer** |

## MEMORANDUM ORDER AND OPINION

Plaintiff Michael Douglas was apprehended by police officers in the parking lot of an apartment building on the evening of June 16, 2016. While trying to flee in his vehicle, Douglas was shot twice by Palatine Detective Josh Hester. Douglas was ultimately convicted of multiple firearm crimes and two counts of aggravated assault with a motor vehicle. He was also charged with six counts of attempted murder but acquitted of those charges. In this civil rights suit under 42 U.S.C. § 1983, Douglas alleges that Defendant officers from the Villages of Palatine and Mount Prospect violated his Fourth Amendment rights by using excessive force to effectuate his arrest and by arresting him without probable cause. Douglas also brought state law malicious prosecution claims against the officers and seeks indemnification from the Villages of Palatine and Mount Prospect for the officers' wrongdoing.

This is not the first time that the court has addressed Douglas's allegations. In an earlier opinion, *Douglas v. Vill. of Palatine*, No. 17 C 6207, 2020 WL 1469439 (N.D. Ill. Mar. 26, 2020), this court dismissed all of Douglas's claims but granted leave to amend his complaint. Now, in his Third Amended Complaint, Douglas has omitted his claims for false arrest but continues to seek relief on all other grounds. The allegations in the Third Amended Complaint are largely similar to the ones previously considered, and the court reaches the same conclusion that it reached earlier. Defendants' motions to dismiss [85, 89] are granted.

## BACKGROUND

As described in detail in the earlier opinion, *Douglas*, 2020 WL 1469439, this case arises out of events occurring in the parking lot of a Palatine, Illinois apartment building around 7:40 p.m. on June 16, 2016. (Third. Am. Compl. [83] ¶ 9.) In his Third Amended Complaint, Douglas alleges, as he did earlier, that he was seated in his vehicle in a parking lot that evening when police officers from the Village of Mount Prospect and the Village of Palatine pulled up in unmarked cars and plain clothing. (*Id.* ¶¶ 10–11.) Douglas alleges that all but one of the officers exited their vehicles, pointed their guns at Douglas, and ordered him to get out of his vehicle. (*Id.* ¶ 14.) One Village of Palatine detective, Michael Campbell, banged on Douglas's car window with a flashlight in what Douglas alleges was an apparent attempt to break the window. (*Id.* ¶ 15.) The window did not break, and Campbell returned to the police van to look for another tool to use. (*Id.*) Douglas did not exit his own vehicle because he "fear[ed] for his life, safety, and well-being." (*Id.* ¶ 16.) Instead, according to Douglas, he "noticed there were no officers behind or in front of his vehicle," so he "backed up to make room," and "tried to drive forward, and away from the officers." (*Id.* ¶ 17.) Douglas also claims he "never hit nor came close to any of the officers" and was merely attempting "to drive out of harm's way" when Palatine Detective Josh Hester fired at least two bullets at Douglas, injuring Douglas's upper right leg and causing an abrasion on the inside of his left knee. (*Id.* ¶ 18.) The other Palatine and Mount Prospect officers stood by and made no effort to prevent Hester from shooting Douglas. (*Id.* ¶ 19.) Douglas was treated for his

gunshot wounds and taken to the hospital. (*Id.* ¶ 20.) He alleges that, after he sustained injuries, the officers at the scene "began to synch their stories about what happened" and "conspired to cover up the violations to [Douglas]'s constitutional rights . . . ." (*Id.* ¶ 21.)

The Third Amended Complaint makes no mention of Douglas's own possession of a firearm, but it is undisputed that he was charged with two counts of being a felon in possession of a firearm, one count of unlawful use of weapons, two counts of aggravated assault with a motor vehicle, and six counts of attempted murder. (Certified Statement of Conviction, Ex. A to Palatine Def.'s MTD [87-1] (hereinafter "Conviction Statement"), at 1.) Douglas was acquitted of the attempted murder charges but convicted on all of the other charges. (Third Am. Compl. ¶ 25; Conviction Statement at 5–6.)

Douglas filed this lawsuit on August 26, 2017 against the Village of Palatine and the involved Palatine Officers. He later amended his complaint [22, 27], adding the Village of Mount Prospect and the involved Mount Prospect officers as Defendants. His Second Amended Complaint alleged claims of excessive force, failure to intervene, false arrest, conspiracy to deprive him of constitutional rights, and malicious prosecution, against both the Palatine and Mount Prospect officers. (Second Am. Compl. [51] ¶¶ 34–85.) Douglas also named the Villages of Mount Prospect and Palatine as Defendants, alleging that they are liable for the actions of their officers based on a theory of *respondeat superior*. (*Id.* ¶¶ 86–92.) Defendants moved to dismiss, and on March 26, 2020, this court granted those motions. *Douglas*, 2020 WL 1469439, at *11. In particular, the court noted that "the factual allegations in [Douglas's complaint] that could potentially entitle [him] to relief are inconsistent with the validity of his criminal convictions," and thus, his claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). *Id.* The court also noted that if it were to reach the merits of Douglas's excessive force and false arrest claims, the officers would likely be entitled to qualified immunity on those claims. *Id.* at *6, *8. The court granted Douglas leave to file an amended complaint, *id.* at *11, and he has done so.

3

Douglas's Third Amended Complaint, filed on May 11, 2020, is before the court. In this iteration, Douglas has withdrawn his claim for excessive force against the Mount Prospect officers, withdrawn all false arrest claims, and dropped claims against some of the individual Defendants named in earlier pleadings. In all other respects, the Third Amended Complaint is essentially the same as the one addressed in the court's earlier ruling. (*See generally* Third Am. Compl.) All Defendants—the Villages of Palatine and Mount Prospect and the individual officers—have again moved to dismiss. For reasons similar to those in the earlier ruling, the court grants the motions and dismisses all federal claims. State law claims are dismissed without prejudice to renewal in state court.

## **DISCUSSION**

To survive a motion to dismiss for failure to state a claim, a plaintiff must allege facts sufficient to show that the claim is "plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The court "accept[s] as true all of the well-pleaded facts in the complaint and draw[s] all reasonable inferences in favor of the plaintiff." *Forgue v. City of Chicago*, 873 F.3d 962, 966 (7th Cir. 2017) (quoting *Kubiak v. City of Chicago*, 810 F.3d 476, 480–81 (7th Cir. 2016)). On the other hand, "legal conclusions and conclusory allegations merely reciting the elements of the claim are not entitled to this presumption of truth." *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 680–81 (2009)). A district court can "take judicial notice of matters of public record without converting a motion for failure to state a claim into a motion for summary judgment." *Gen. Elec. Cap. Corp. v. Lease Resol. Corp.*, 128 F.3d 1074, 1080–81 (7th Cir. 1997) (collecting cases); FED. R. EVID. 201(b). Such matters include public court documents, *White v. Keely*, 814 F.3d 883, 886 n.2 (7th Cir. 2016), as well as documents from other federal or state court proceedings "where those proceedings 'have a direct relation to matters at issue.'" *Loughnane v. Rogers*, No. 19 C 0086, 2019 WL 4242486, at *5 (N.D. Ill. Sept. 6, 2019) (quoting *Opoka v. Immigr. & Naturalization Serv.*, 94 F.3d 392, 394 (7th

Cir. 1996)). And "[t]o the extent that judicially-noticed facts contradict the allegations of the complaint, the court will not accept those allegations." *Purnell v. McCarthy*, No. 14 C 2530, 2017 WL 478301, at *1 (N.D. Ill. Feb. 6, 2017) (citing Wright & Miller, FEDERAL PRACTICE AND PROCEDURE § 1363 at 464–65 (3d ed. 2013)).

Here, Douglas raises claims for excessive force, failure to intervene, conspiracy to deprive of constitutional rights, and malicious prosecution, and seeks indemnification of the individual officers by the Villages of Palatine and Mount Prospect. The court will address each claim below.

### A. Excessive Force (Count I)

In Count I of his Third Amended Complaint, Douglas charges the Village of Palatine Police Officers, including Josh Hester, with using excessive force against him in violation of 42 U.S.C. § 1983. He has withdrawn the excessive force claim against the Mount Prospect Officers, and although he lists other named Palatine officers in his excessive force claim (Third Am. Compl. Count I), he refers in his briefing only to the conduct of Officer Hester in shooting and injuring him. (Pl.'s Palatine Resp. [96] at 5–7.) As the court explained earlier, *see Douglas*, 2020 WL 1469439, at *4, the case of *Heck v. Humphrey*, 512 U.S. 477 (1994) held that a criminal defendant with a still-valid state conviction may not seek § 1983 relief stemming from events related to his conviction if "a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence." *Id.* at 487. The district court must dismiss such a claim "unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* Effectively, then, "as long as [the plaintiff]'s conviction stands, he is confined to a version of the facts that does not undermine the conviction." *Tolliver v. City of Chicago*, 820 F.3d 237, 246 (7th Cir. 2016). Even if the plaintiff's claim could be theoretically compatible with his underlying conviction, the claim is still *Heck*-barred "if specific factual allegations in the complaint are necessarily inconsistent with the validity of the conviction." *McCann v. Neilsen*, 466 F.3d 619, 621 (7th Cir. 2006) (citing *Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003)).

A plaintiff convicted of aggravated assault is not always barred from claiming that the assaulted officer used unreasonable force in effectuating his arrest. For example, even where the assault in question may have warranted *some* use of force, a plaintiff can claim that "the *degree* of force applied was unreasonable." *Hemphill v. Hopkins*, No. 08 CV 157, 2011 WL 6155967, at *2 (N.D. Ill. Dec. 12, 2011) (emphasis added). Likewise, *Heck* does not prevent a plaintiff from claiming that an officer used unreasonable force "after the crime [wa]s completed." *Gilbert v. Cook*, 512 F.3d 899, 901 (7th Cir. 2008). Ultimately, accepting as true the facts underlying his conviction, the plaintiff must show that "the officer's use of force was objectively excessive from the perspective of a reasonable officer on the scene under the totality of the circumstances." *Horton v. Pobjecky*, 883 F.3d 941, 949 (7th Cir. 2018) (citing *Graham v. Connor*, 490 U.S. 386, 396–97 (1989)).

Douglas cannot make such a showing here. He continues to allege that he did not drive his car at or near Detective Hester. According to Douglas's allegations, he "never tried to murder Defendant Hester or anyone else" (Third Am. Compl. ¶ 13), "there were no officers behind or in front of his vehicle" when he tried to flee (*id.* ¶ 17), he "never hit nor came close to any of the officers" (*id.* ¶ 18), he "was not driving at or in [the] direction [of]" Hester (*id.* ¶ 28), and "[a] witness who was parked directly in front of Plaintiff's vehicle did not see Defendant Hester anywhere near the front of Plaintiff's vehicle when it moved forward and around hers." (*Id.* ¶ 30.) In short, Douglas stands by his assertions that Hester could not have reasonably felt he was in danger as Douglas never drove his car near or at Hester. Consequently, Douglas urges, Hester could not have been justified in firing his weapon at Douglas, because no "objectively reasonable officer in the same circumstances would conclude that [he] posed a threat of death or serious physical injury to the officer or to others." *Williams v. Ind. State Police Dep't*, 797 F.3d 468, 473 (7th Cir. 2015) (quoting *Marion v. City of Corydon, Ind.*, 559 F.3d 700, 705 (7th Cir. 2009)).

These allegations, however, are inconsistent with Douglas's conviction for aggravated assault with a motor vehicle under 720 ILCS 5/12-2(c)(7)–(8) and are thus barred by *Heck*.[1] Aggravated assault with a motor vehicle requires that the defendant place the victim "in reasonable apprehension of being struck by the moving motor vehicle." 720 ILCS 5/12-2(c)(7)–(8). Because Douglas was convicted of this charge, and that conviction has not been overturned, the court must accept as true that Hester reasonably feared Douglas would strike him with his car. An objectively reasonable officer in Hester's situation could conclude, further, that the driver of the fleeing car "posed a threat of death or serious physical injury to the officer or to others," *Williams*, 797 F.3d at 473, and thus, Hester was justified in using deadly force to apprehend Douglas.[2] Under Douglas's own version of events, this case is on all fours with *Tolliver*. *See Tolliver,* 820 F.3d at 246 ("Reasonable officers . . . would have perceived the car [rolling towards them] as a deadly weapon that created a threat of serious physical harm."). *Heck* bars Douglas's allegations suggesting that no officers were anywhere near his vehicle at any time during his attempted escape. For these reasons, the court rejects Douglas's argument that Hester used greater force than was warranted under the circumstances.

Cases that Douglas cites do not alter the court's conclusion. First, he cites *Holmes v. Vill. of Hoffman Ests.*, 511 F.3d 673 (7th Cir. 2007), where the plaintiff alleged that he was cooperating with one police officer when another officer arrived on the scene and—without any provocation—slammed the plaintiff's head hard against the roof of his car before putting the plaintiff in a wristlock, throwing the plaintiff on the ground, and grinding his knee against the plaintiff's face.

---

[1] The court assumes this conviction is still valid as Douglas has not alleged otherwise. *See Heck*, 512 U.S. at 486–87 ("[A] § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254.").

[2] It is worth noting that "[t]he Fourth Amendment does not require 'the use of the least or even a less deadly alternative so long as the use of deadly force is [itself] reasonable . . . .'" *Horton*, 883 F.3d at 950 (quoting *Plakas v. Drinski*, 19 F.3d 1143, 1149 (7th Cir. 1994)).

*Id.* at 676. The Seventh Circuit held that "[a]ccepting [the plaintiff]'s version of events as true . . . it is difficult to conceive of a reasonable explanation for [the officer]'s conduct, and a jury could readily conclude that [the officer] used excessive force . . . ." *Id.* at 686. Douglas's case differs. The *Holmes* plaintiff had not been convicted of any crime, and thus, *Heck* posed no barrier to accepting the plaintiff's account of events as true. Douglas's conduct, supporting a conviction of aggravated assault with a motor vehicle, provides an obvious "reasonable explanation" for the officer's conduct.

In *Hardrick v. City of Bolingbrook*, 522 F.3d 758 (7th Cir. 2008), the Seventh Circuit held that the plaintiff's § 1983 claim was not *Heck*-barred because "[t]he fact that [plaintiff] 'struggled while being handcuffed' at one point in time does not preclude the possibility that at another point in time, [he] was 'peaceably waiting to be handcuffed.'" *Id.* at 764. In this case, in contrast, Douglas has identified no temporal disconnect between the events underlying his aggravated assault conviction and those leading Hester to fire upon him. As Douglas describes the sequence of events, he "backed up to make room, tried to drive forward, and away from the officers," and Detective Hester fired "as [Douglas] attempted to drive out of harm's way." (Third Am. Compl. ¶¶ 17–18.) In light of Douglas's still-valid conviction for aggravated assault, he is bound by the conclusion that Hester reasonably feared for his safety, and the complaint gives the court no reason to doubt that it was this reasonable fear that led to the gunshots. The court, "view[ing] facts from afar, long after the gunsmoke cleared" is in no position to parse such "split-second decision[making] under intense, dangerous, uncertain, and rapidly changing circumstances." *Horton*, 883 F.3d at 950. At a minimum, Hester would enjoy qualified immunity against a challenge to his decision to use force. *Brosseau v. Haugen*, 543 U.S. 194, 200–01 (2004) (refusing to hold it "clearly established" that an officer used excessive force by shooting a "disturbed felon, set on avoiding capture through vehicular flight, when persons in the immediate area are at risk from that flight").

Finally, Douglas cites *McCann*, 466 F.3d at 622. In that case, holding a "spike-type weapon," the plaintiff approached a police officer, who responded by shooting plaintiff in the chest. The district court concluded that plaintiff's excessive force case against the officer was *Heck*-barred by his conviction for aggravated assault of the officer. The Court of Appeals concluded, however, that the somewhat "convoluted syntax" of the complaint could be read not as a denial of plaintiff's assaulted conduct, but as an allegation that plaintiff "never posed a threat of violence, attempted escape, or resisted arrest *to a degree* that would have justified the use of deadly force as a response." *Id.* (emphasis in original). Plaintiff Douglas's allegations in this case, largely unchanged from those the court addressed in its earlier opinion, cannot be read in such a light. As explained earlier, his allegations are inconsistent with the findings of fact necessary to his conviction for aggravated assault with a motor vehicle:

> Plaintiff's current version of the events "negates the mental state necessary to support his conviction," because the judge could not have found that Plaintiff *knowingly* operated a vehicle in a way that placed someone in reasonable apprehension of being struck if, as Plaintiff alleges, there were no officers in front of his vehicle when he attempted to drive away. Plaintiff's account also negates the offense's conduct requirement; the judge could not have found that Plaintiff operated his vehicle in a way such that anyone was "in reasonable apprehension of being struck by [Plaintiff's] moving vehicle" if, as Plaintiff alleges, his vehicle was "never close to any of the officers" and he "posed absolutely no threat to any Defendant or anyone else." . . . Plaintiff's complaint presents an account of the events on June 16, 2016 in which he carefully navigated his vehicle away from the police officers in an attempt to get to safety, and Officer Hester, unprovoked, responded by firing at least two shots at him. These factual claims "necessarily imply the invalidity of the criminal conviction." *Tolliver*, 820 F.3d at 243.

*Douglas*, 2020 WL 1469439 at *4.

In *Tolliver,* the plaintiff pleaded guilty to aggravated battery of a police officer based on stipulations that Tolliver had driven his vehicle at a police officer, before that officer—out of fear for his own safety—fired his weapon at Toliver's vehicle, striking Tolliver. 820 F.3d at 241. After his conviction, Tolliver filed a § 1983 suit, maintaining that he had been paralyzed at the time, and the car, without any voluntary action from Tolliver, merely rolled toward the police officer in question. *Id.* at 241, 243. The Seventh Circuit rejected Tolliver's claims under the *Heck* doctrine

9

because aggravated battery requires a finding of a voluntary act, so Tolliver's "car-rolling" story was inconsistent with his conviction for aggravated battery. *Id.* at 243.

This court relied on *Tolliver* in its earlier ruling, and Douglas's allegations in the Third Amended Complaint do not alter the picture. His only direct nod to the court's analysis is the addition of ¶ 29, in which he asserts that he "is not challenging his 2017 convictions . . . . " But that proclamation does not solve the problem. See *Okoro*, 324 F.3d at 490 ("It is irrelevant that [the plaintiff] disclaims any intention of challenging his conviction; if he makes allegations that are inconsistent with the conviction's having been valid, *Heck* kicks in and bars his civil suit."). He also makes two additional allegations that are, like the ones he repeats, either inconsistent with the findings necessary to his conviction ("Plaintiff was not driving at or in . . . [the] direction [of]" Hester) or not relevant (a witness "parked directly in front of Plaintiff's vehicle did not see Defendant Hester anywhere near the front of Plaintiff's vehicle when it moved forward and around hers when Hester fired two rounds at Douglas."). (Third Am. Compl. ¶¶ 28, 30.) Here, as in *Tolliver*, if the court were to accept Douglas's version of events, that version would directly contradict the *mens rea* requirement of aggravated assault with a motor vehicle. Douglas's conviction is inconsistent with the claims he continues to make, that he "never . . . came close to any of the officers," that "there were no officers behind or in front of his vehicle" when he attempted to escape, and that he "was not driving at or in . . . [the] direction [of]" Hester. (*Id.* ¶¶ 17–18.)

**B.    Qualified Immunity**

Although the parties briefed the issue of qualified immunity, the court need not confront this matter in great detail. To the extent there is doubt about the issue, however, the qualified immunity defense would be an independent basis for dismissal of the excessive force claim. Government officials are immune from liability for civil damages "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Weinmann v. McClone*, 787 F.3d 444, 447 (7th Cir. 2015) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). It is "of course clearly established that a police officer may

not use excessive force in arresting an individual." *Becker v. Elfreich*, 821 F.3d 920, 928 (7th Cir. 2016) (internal quotations omitted). That said, however, "the right to be free from the degree of force employed in a particular situation may not have been clear to a reasonable officer at the scene." *Id.* (quoting *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008)). Thus, to surmount the barrier of qualified immunity, a plaintiff must show that it was "clearly established" that the officer's use of force was "objectively excessive from the perspective of a reasonable officer on the scene under the totality of the circumstances." *Horton*, 883 F.3d at 949 (citing *Graham*, 490 U.S. at 396–97). Again, the use of deadly force is warranted "when an officer believes that a suspect's actions place[ ] him, his partner, or those in the immediate vicinity in immediate danger of death or serious bodily injury." *Sherrod v. Berry*, 856 F.2d 802, 805 (7th Cir. 1988). In the excessive force context, a court must avoid analyzing the actions of officers "with the 20/20 vision of hindsight," *Tolliver*, 820 F.3d at 245 (citations omitted), and instead should "give considerable leeway to law enforcement officers' assessments" of the degree of force that is reasonable in a particular dangerous situation. *Williams*, 797 F.3d at 473 (citing *Abbott v. Sangamon Cnty., Illinois*, 705 F.3d 706, 724–25 (7th Cir. 2013)).

As noted in the court's earlier ruling, based upon the facts necessary to Douglas's conviction, Officer Hester did not have long to react to Douglas's fleeing in his car, had no way of knowing whether Douglas would hit him or another person, and "fired before the threat posed by [Douglas] had passed." *Douglas*, 2020 WL 1469439, at *5. That these circumstances support a qualified immunity defense finds support in *Brosseau*, where the Supreme Court held that an officer was entitled to qualified immunity even though she shot a suspect "in the back as he attempted to flee from law enforcement authorities in his vehicle" in part because "persons in the immediate area [were] at risk from that flight." 543 U.S. at 194, 200. Likewise, in *Tolliver*, the Seventh Circuit held that officers who fired multiple shots in rapid succession into a moving car were shielded by qualified immunity because the car could reasonably be perceived as a "deadly weapon that created a threat of serious physical harm." 820 F.3d at 246. In briefing the renewed

11

motions to dismiss, Douglas has made no meaningful effort to distinguish *Brosseau* or *Tolliver*, though it is his burden to demonstrate "that a right was clearly established at the time the alleged violation occurred." *Douglas*, 2020 WL 1469439, at *6 (quoting *Green v. Newport*, 868 F.3d 629, 633 (7th Cir. 2017)). Instead, he cites *Payne v. Pauley*, 337 F.3d 767 (7th Cir. 2003), where the facts surrounding the defendant officer's use of force were sharply disputed: the plaintiff who was the victim of that force was "alleged to have committed a very minor, non-violent crime," and there was no conviction binding plaintiff to a version of events inconsistent with the officer's liability. Unlike the defendant in *Payne*, Douglas not only attempted to flee, but also placed Officer Hester in reasonable fear of being struck by his car. Officer Hester would have been entitled to qualified immunity to Douglas's excessive force claim even if it had survived this motion on the merits.

**C.     State Law Malicious Prosecution (Count VI and VII)**

The court's subject matter jurisdiction in this case arose from the presence of a federal question, but now that the court has dismissed Douglas's claims under § 1983, the court no longer has federal-question jurisdiction over this case.[3] Thus, this court can only hear Douglas's state law malicious prosecution claim if it does so under its supplemental jurisdiction. 28 U.S.C. § 1367. When this court last heard this case, it acknowledged that "[n]ormally, the court would not exercise supplemental jurisdiction over Plaintiff's remaining state-law malicious prosecution claim . . . ." *Douglas*, 2020 WL 1469439, at *8. Indeed, "[w]hen all federal claims in a suit in federal court are dismissed before trial, the presumption is that the court will relinquish federal jurisdiction over any supplemental state-law claims, which the plaintiff can then prosecute in state court." *Al's Serv. Ctr. v. BP Prods. N. Am., Inc.*, 599 F.3d 720, 727 (7th Cir. 2010). The court nevertheless

---

[3] The Third Amended Complaint also alleges jurisdiction under 28 U.S.C. § 1343(1)–(4). Subsections (1) and (2) of that statute, however, relate to 42 U.S.C. § 1985, and subsection (4) applies only to causes of action established by an "Act of Congress" rather than one established by state law. Subsection (3) has traditionally been considered the jurisdictional counterpart to 42 U.S.C. § 1983, but "[n]ow that the general federal-question statute, 28 U.S.C. § 1331, does not impose an amount-in-controversy requirement, § 1343(3)(a) is redundant of § 1331." Wright & Miller, FEDERAL PRACTICE AND PROCEDURE, § 3573 n.18 (3d ed. 2020). Having dismissed his § 1983 claims, the court need not address § 1343(a)(3).

addressed Douglas's malicious prosecution claim because that seemed the prudent course in anticipation of Douglas's expected Third Amended Complaint. *Douglas*, 2020 WL 1469439, at *8 (quoting *Gonzalez v. City of Chicago*, No. 16 CV 8012, 2018 WL 1561735, at *5 n.5 (N.D. Ill. Mar. 30, 2018)). As the court does not anticipate further pleading, there is no longer a need for such prudence. The malicious prosecution claims are dismissed without prejudice.

**D.    Conspiracy (Counts IV and V), Failure to Intervene (Counts II and III), and Indemnification (Counts VIII and IX)**

Claims for conspiracy to deprive of constitutional rights and failure to intervene to prevent a deprivation of constitutional rights each naturally rely on proof of an underlying constitutional violation. *Coleman v. City of Peoria,* 925 F.3d 336, 351 (7th Cir. 2019) (citing *Daugherty v. Page*, 906 F.3d 606, 612 (7th Cir. 2018)) (conspiracy); *Gill v. City of Milwaukee*, 850 F.3d 335, 342 (7th Cir. 2017) (failure to intervene)). Likewise, Douglas's claims for indemnification from the Villages of Palatine and Mount Prospect necessitate a finding that the police officers from each village are liable for Douglas's claims against them. *See* 745 ILCS 10/9-102 ("A local public entity is empowered and directed to pay any tort judgment or settlement for compensatory damages . . . for which *it or an employee while acting within the scope of his employment is liable* in the manner provided in this Article.") (emphasis added); 745 ILCS 10/2-109 ("A local public entity is not liable for an injury resulting from an act or omission of its employee where the employee is not liable."). Because the court concludes Douglas has failed to allege any underlying constitutional violation, Defendants' motions to dismiss are thus granted as to each of these derivative claims as well.

**E.    Leave to amend**

When a complaint is dismissed on motion, the court ordinarily grants the plaintiff leave to amend. *See Runnion ex rel. Runnion v. Girl Scouts of Greater Chi. & Nw. Ind.*, 786 F.3d 510, 520 (7th Cir. 2015); FED. R. CIV. P. 15(a)(2). But "district courts have broad discretion to deny motions to amend in cases of . . . failure to cure deficiencies by amendments previously allowed,

undue prejudice or futility." *Garner v. Kinnear Mfg. Co.*, 37 F.3d 263, 269 (7th Cir. 1994); *cf. Coleman v. Ramada Hotel Operating Co.*, 933 F.2d 470, 473 (7th Cir. 1991) ("[J]ustice does not demand that [plaintiff] be given leave to append frivolous or repetitive allegations to her complaint at any stage in the proceedings."). Indeed, "[w]here it is clear that the defect cannot be corrected so that amendment is futile, it might do no harm to deny leave to amend and to enter an immediate final judgment." *Runnion*, 786 F.3d at 520. Moreover, where a plaintiff never formally requests leave to amend, the district court may be able to reasonably assume "that the plaintiff's amended complaint would suffer the same fatal flaws as the one before it." *Webb v. Frawley*, 906 F.3d 569, 582 (7th Cir. 2018) (citing *James Cape & Sons Co. v. PCC Constr. Co.*, 453 F.3d 396, 401 (7th Cir. 2006)).

Douglas has not expressly requested leave to file a fourth amended complaint, and the court declines to authorize it. The contents of the Third Amended Complaint differ only slightly from the earlier one, and it continues to include allegations the court has found barred by *Heck v. Humphrey*. (*See, e.g.*, Third Am. Compl. ¶¶ 13, 17–18.) Where Douglas did add relevant allegations, they did not alter the analysis. For example, in paragraphs 28 and 30, Douglas added allegations that further suggested Officer Hester did not reasonably fear for his safety—a conclusion directly at odds with Douglas's conviction for aggravated assault. Douglas's federal claims are dismissed with prejudice. *Cf. Wakeen v. Hoffman House, Inc.*, 724 F.2d 1238, 1244 (7th Cir. 1983) ("It is not an abuse of discretion to refuse a request to amend when the proffered amendment merely restates the same facts using different language, or reasserts a claim previously determined."). His state claims are dismissed without prejudice to litigation in state court.

## **CONCLUSION**

Defendants' motions to dismiss [85], [89] are granted. Douglas's federal claims are dismissed without prejudice to litigation of state law claims in state court. Final judgment will enter.

ENTER:

Dated: March 16, 2021

_____
REBECCA R. PALLMEYER
United States District Judge