UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| MICHAEL A. DOUGLAS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>VILLAGE OF PALATINE, a municipal )<br>corporation, VILLAGE OF PALATINE )<br>DETECTIVES JOSH HESTER, BADGE #213, )<br>KYLE FRANGIAMORE, BADGE #151, )<br>MICHAEL CAMPBELL, BADGE #212, PHIL )<br>HEMMELER, BADGE #115, ROBERT BICE, )<br>in their individual capacities, VILLAGE OF )<br>MOUNT PROSPECT, a municipal )<br>corporation, VILLAGE OF MOUNT )<br>PROSPECT SERGEANT RYAN KANE, )<br>BADGE #739, DETECTIVES WILLIAM RYAN, )<br>BADGE #264, and RICHARD LABARBERA, )<br>BADGE #234, in their individual capacities, )<br>)<br>Defendants. ) | No. 17 C 6207<br><br>Judge Rebecca R. Pallmeyer |

**MEMORANDUM OPINION AND ORDER**

Following an encounter with police in a parking lot on the evening of June 16, 2016, Plaintiff Michael A. Douglas was charged with various crimes in state court. In this § 1983 case, which Douglas initiated while the state case was still pending, he asserted various constitutional and state-law claims against the officers and municipalities that he believed were involved in the June 16 incident and in covering up their wrongdoing. Douglas was eventually convicted on some of the state charges, a result that effectively doomed this case at the pleadings stage. Plaintiff nevertheless pursued the case through four complaints. After the court dismissed the Third Amended Complaint, Defendants moved for Rule 11 sanctions against Douglas and his attorney. The motion is denied as against Plaintiff Douglas but granted in part as against counsel, for the reasons explained here.

## **BACKGROUND**

The court has described the facts underlying this case in two prior opinions.  *See Douglas v. Village of Palatine*, No. 17 C 6207, 2020 WL 1469439, at *1–2 (N.D. Ill. Mar. 26, 2020) (granting motions to dismiss the Second Amended Complaint); *Douglas v. Village of Palatine*, No. 17 C 6207, 2021 WL 979156, at *1–2 (N.D. Ill. Mar. 16, 2021) (granting motions to dismiss the Third Amended Complaint).  A brief summary: Plaintiff alleged in the Second and Third Amended Complaints that he was sitting in his car when several plain-clothes police officers approached him with their guns drawn and demanded that he step out of his vehicle.  Rather than complying with that order, Plaintiff, who says that he feared for his life, backed his car up and then attempted to drive away from the scene.  As he did so, one of the officers fired several rounds at him, hitting his leg and knee.  Plaintiff was then taken to the hospital and treated.

Plaintiff was arrested shortly after this incident and charged in state court with aggravated assault, possession of a weapon by a felon, unlawful possession or use of a weapon, and attempted murder.  While the state proceeding was pending, Plaintiff asserted various constitutional and state-law claims in his initial § 1983 complaint and an amended complaint [1, 27].  Then, after a bench trial in late 2018, Plaintiff was convicted on all charges except the attempted murder.  Those convictions necessarily rested on various conclusions about the June 16 incident, including findings that Plaintiff knowingly operated a vehicle in a way that placed someone in reasonable apprehension of being struck and that such conduct gave the officers probable cause to arrest him.  Plaintiff nevertheless filed a Second Amended Complaint [51] less than one month later, asserting claims of excessive force, false arrest, failure to intervene, conspiracy to deprive him of constitutional rights, and malicious prosecution by the individual Defendants.  He also sought indemnification by the two municipal Defendants.

Soon after Plaintiff filed the Second Amended Complaint, each set of Defendants sent his Plaintiff's attorney a Rule 11 "safe harbor" letter identifying various fundamental issues with the claims, particularly given Plaintiff's recent convictions.  (*See* Ex. A to Palatine Defs.' Mot. [106-1]

(May 31, 2019 letter); Ex. A to Mt. Prospect Defs.' Mot. [107] (June 6, 2019 letter).) Each letter explained how Plaintiff's claims either contravened the factual basis of his valid convictions or otherwise were not supported by factual allegations in his complaint. And each letter threatened Plaintiff's counsel with a Rule 11 motion if he failed to withdraw his claims.

Plaintiff and his counsel chose to stand on the Second Amended Complaint, and both sets of Defendants moved to dismiss [63, 66]. In its first written opinion, this court granted those motions in their entirety. *See Douglas*, 2020 WL 1469439, at *1. It held that Plaintiff's constitutional claims were either unsupported by factual allegations or foreclosed by *Heck v. Humphrey*, 512 U.S. 477 (1994). *See id.* at *3–4, *6–8, *10. The court explained, in the alternative, that Defendants would be entitled to qualified immunity on those claims. *See id.* at *4–6, *8. The court also held that Plaintiff's state-law claim for malicious prosecution failed as a matter of law. *See id.* at *8–10. In its conclusion, the court advised Plaintiff that he "has leave to file an amended complaint, if he can do so consistent with Rule 11, within 45 days." *Id.* at *11.

A few weeks later, Plaintiff filed the Third Amended Complaint [83]. In this iteration, he dropped the excessive-force claim against some Defendants, dropped the false-arrest claim entirely, and removed a few individual Defendants, but otherwise asserted the same constitutional and state-law claims. And despite the court's prior holding that several of Plaintiff's factual allegations were largely barred by *Heck*, he made only minimal changes in this respect. The parties then went through another round of Rule 11 correspondence. Each set of Defendants sent Plaintiff's counsel another safe-harbor letter identifying fundamental issues with the Third Amended Complaint—not only under *Heck* but also as flagged in this court's lengthy prior opinion. (*See* Ex. B to Palatine Defs.' Mot. for Sanctions [106-2] (May 13, 2020 letter) (describing the Third Amended Complaint as "nearly identical in form and substance" to the recently-dismissed second); Ex. B to Mt. Prospect Defs.' Mot. [107] (June 16, 2020 letter) (same).) And, as before, Defendants' letters threatened Plaintiff's counsel with Rule 11 motions if the claims were not withdrawn.

3

Plaintiff and his counsel once again chose to stand on his complaint, and both sets of Defendants again moved to dismiss [85, 89]. In another written opinion, this court granted those motions in their entirety and dismissed the Plaintiff's federal claims with prejudice. *See Douglas*, 2021 WL 979156, at *7. The court reiterated its holding that the excessive-force claim was "inconsistent with [the Plaintiff's] conviction for aggravated assault with a motor vehicle under 720 ILCS 5/12-2(c)(7)–(8) and . . . thus barred by *Heck*." *Id.* at *3–4. And because Plaintiff could not prove an underlying constitutional violation, his derivative claims for conspiracy and failure to intervene necessarily failed as well. *Id.* at *6–7. Just one day after the court issued that opinion and entered judgment, Defendants filed these motions for sanctions.

## DISCUSSION[1]

Federal Rule of Civil Procedure 11 serves a vital role in ensuring that litigants do not abuse the powers of the federal court system. *See N. Ill. Telecom, Inc. v. PNC Bank, N.A.*, 850 F.3d 880, 883–84 (7th Cir. 2017). When an attorney presents any "pleading, written motion, or other paper" to the court, Rule 11 holds them to have "certifie[d] that to the best of the person's knowledge, information, and belief, . . . the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; [and] the factual contentions have evidentiary support." FED. R. CIV. P. 11(b)(2)–(3).

Defendants argue that Plaintiff and his counsel violated Rule 11(b) by repeatedly asserting legally and factually baseless claims:

> All of the allegations and claims made against the . . . Defendants in every iteration of Plaintiff's Complaint were largely unsupported by law or fact, especially in light of the specific findings of fact and rulings made by Judge Steven Goebel in the underlying criminal proceedings, in conjunction with this Court's specific findings and rulings in its well-reasoned dismissal orders of March 26, 2020 and March 16, 2021.

---

[1] The two sets of Defendants have filed essentially identical motions. (*See* Palatine Defs.' Mot. [106]; Mt. Prospect Defs.' Mot. [107].) And Plaintiff's counsel, in turn, has filed essentially identical responses. (*See* Pl. and His Counsel's Resp. in Opp. to Palatine Defs.' Mot. [114]; Pl.'s Memo. in Opp. to Palatine Defs.' Mot. [115]; Resp. in Opp. to Mt. Prospect Defs.' Mot. [116]; Pl.'s Memo. in Opp. to Mt. Prospect Defs.' Mot. [117].) In the interest of clarity, the court discusses these two motions as if there is only one.

> Despite being given two opportunities to reconsider and withdraw the Second and Third Amended Complaints, Plaintiff's counsel chose to stand on both, forcing the . . . Defendants to file and brief two motions to dismiss . . . .

(Palatine Defs.' Mot. at 5; Mt. Prospect Defs.' Mot. at 5.) In Defendants' view, the entirety of this case represented "nearly 4 years of protracted, costly, and most importantly, needless federal court litigation." (Palatine Defs.' Mot. at 5; Mt. Prospect Defs.' Mot. at 5.) Despite that broad proclamation, Defendants' bottom-line request is appropriately narrower. They seek—from both Plaintiff and his attorney—"reimbursement of all their costs and attorney's fees in defending this matter since January 4, 2019, the filing date of Plaintiff's Second Amended Complaint." (Palatine Defs.' Mot. at 7; Mt. Prospect Defs.' Mot. at 7.)

Plaintiff's counsel responds, first, that Defendants "failed to demonstrate how they were specifically harmed, instead using an almost identical boilerplate motion for sanctions that could be used for any litigant." (Pl.'s Memo. in Opp. to Palatine Defs.' Mot. at 1; *see also* Pl.'s Memo. in Opp. to Mt. Prospect Defs.' Mot. at 1 (same).) The response also details counsel's efforts to investigate the facts and legal issues underlying the case, which ostensibly reflect reasonable due diligence. (Pl.'s Memo. in Opp. to Palatine Defs.' Mot. at 3–4; *see also* Pl.'s Memo. in Opp. to Mt. Prospect Defs.' Mot. at 4–5 (same).) Plaintiff's counsel even maintains that "[the Plaintiff's] position[s] have been and are still reasonable under the circumstances." (Pl.'s Memo. in Opp. to Palatine Defs.' Mot. at 3; *see also* Pl.'s Memo. in Opp. to Mt. Prospect Defs.' Mot. at 4 (same); *id.* at 6 ("[The Plaintiff] and his counsel presented an objectively reasonable argument in support of his view of what the law is or should be regarding his claims. They should not now be punished for doing so, because the court did not see things his way."). Counsel never, however, engages with this court's holding: that *Heck* bars this action to the extent it would call into question the validity of Plaintiff's state conviction.

In determining whether a litigant has satisfied the substantive standards of Rule 11(b), the court must "undertake an objective inquiry into whether the party or his counsel should have known that his position is groundless." *Cuna Mut. Ins. Soc'y v. Office & Prof'l Emps. Int'l Union*,

5

443 F.3d 556, 560 (7th Cir. 2006). "An attorney cannot avoid sanctions by claiming subjective good faith if a reasonable inquiry into the facts and law would have revealed the frivolity of the position." *McGreal v. Village of Orland Park*, 928 F.3d 556, 560 (7th Cir. 2019).

Plaintiff's counsel took objectively unreasonable positions in litigating this case—and even in briefing this Rule 11 motion. For one thing, Defendants did not need to establish how they were "specifically harmed" by the allegedly sanctionable conduct (though, in the court's view, litigants forced to prepare and file repeated motions on the same issue are indeed harmed).[2] Rule 11 does not impose any such harm requirement. The rule aims in part to "maintain the integrity" of the federal court system and to "streamline the administration" of civil justice. *See Bus. Guides, Inc. v. Chromatic Commc'ns Enters.*, 498 U.S. 533, 552 (1991). Baseless filings do not harm only one's adversary; they harm the entire judicial system, including the court whose time they waste. For this reason, courts mete out Rule 11 sanctions as they deem sufficient for general and specific deterrence. FED. R. CIV. P. 11(c)(4). They do not award sanctions as "substitutes for tort damages." *Bus. Guides, Inc.*, 498 U.S. at 553; *see also Cooney v. Casady*, 735 F.3d 514, 523 (7th Cir. 2013) (noting that Rule 11 is "not a fee-shifting measure"). Second, Plaintiff's counsel misunderstands the objective nature of the Rule 11 inquiry. In responding to Defendants' motions, she details her own research about this case and insists that she had no improper purpose in bringing it. (Pl.'s Memo. in Opp. to Palatine Defs.' Mot. at 2–4; Pl.'s Memo. in Opp. to Mt. Prospect Defs.' Mot. at 2, 4–5.) But her own efforts aside, the operative question is "whether the party or his counsel *should have known* that his position is groundless." *Cuna Mut. Ins. Soc'y*, 443 F.3d at 560 (emphasis added). Finding an answer requires a closer investigation into the party's claims and allegations.

Shortly before filing the Second Amended Complaint, Plaintiff had been convicted of aggravated assault with a motor vehicle, 720 ILCS 5/12-2(c)(7)–(8), unlawful use of weapons,

---

[2] As the Mount Prospect Defendants highlight, for example, municipalities are public entities that pay their legal fees with taxpayer dollars. (*See* Mt. Prospect Defs.' Reply [119] at 5.)

720 ILCS 5/24-1(a)(4), and unlawful possession of a weapon by a felon, 720 ILCS 5/24-1.1(a). Because Plaintiff's civil claims arose from the same events as these convictions, his complaint obviously implicated the *Heck* doctrine—a principle firmly established in constitutional litigation.[3] Defendants recognized this issue and sent safe-harbor letters that carefully explained why, in their view, the convictions foreclosed Plaintiff's claims. When this court dismissed the Second Amended Complaint soon thereafter, it adopted Defendants' basic position with respect to the excessive-force and false-arrest claims. Plaintiff's claims (in the form he pleaded them) were indeed foreclosed by *Heck* because they contradicted the factual bases of his convictions. *See Douglas*, 2020 WL 1469439, at *3–4, *6–8, *10. The court took pains to explain why the excessive-force claim failed:

> Plaintiff's current version of the events negates the mental state necessary to support his [aggravated assault] conviction, because the [state] judge could not have found that Plaintiff knowingly operated a vehicle in a way that placed someone in reasonable apprehension of being struck if, as Plaintiff alleges, there were no officers in front of his vehicle when he attempted to drive away. Plaintiff's account also negates the offense's conduct requirement; the judge could not have found that Plaintiff operated his vehicle in a way such that anyone was in reasonable apprehension of being struck by [Plaintiff's] moving vehicle if, as Plaintiff alleges, his vehicle was "never close to any of the officers" and he "posed absolutely no threat to any Defendant or anyone else."

*Douglas*, 2020 WL 1469439, at *4 (quoting Second Am. Compl. ¶¶ 13, 19). And the court did likewise for Plaintiff's false-arrest claim:

> Plaintiff was convicted of aggravated assault as a result of driving his vehicle toward a police officer; that is, Plaintiff was arrested for illegal conduct that he committed in the presence of the officers. Plaintiff cannot argue here that his conduct, which the state judge found sufficient to convict him of aggravated assault, gave the officers no reason to believe that he had committed a crime.

*Douglas*, 2020 WL 1469439, at *7 (citation omitted).

---

[3] The *Heck* principle is by now well understood: Even if a § 1983 plaintiff does not intend to challenge a valid prior conviction, "if he makes allegations that are inconsistent with the conviction's having been valid, *Heck* kicks in and bars his civil suit." *Okoro v. Callaghan*, 324 F.3d 488, 490 (7th Cir. 2003); *see also Tolliver v. City of Chicago*, 820 F.3d 237, 243 (7th Cir. 2016) (applying *Heck* in a case highly similar to this one).

In their Rule 11 motions, Defendants ask the court to impose sanctions as of the date on which the Second Amended Complaint was filed. The court declines to extend the sanctions timeline back so far. It goes without saying that "sanctions do not inevitably flow from being wrong on the law," including at the pleading stage. *Harlyn Sales Corp. Profit Sharing Plan v. Kemper Fin. Servs., Inc.*, 9 F.3d 1263, 1270 (7th Cir. 1993). After all, Rule 11 is "not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories." FED. R. CIV. P. 11 advisory committee's notes (1983). As the court explained in its first opinion, a prior criminal conviction does not bar all civil claims that may arise broadly from the same events. *Douglas*, 2020 WL 1469439, at *3 (discussing excessive-force claims); *id.* at *7 (discussing false-arrest claims). *Heck* leaves plenty of room for creative lawyering, just as Rule 11 does. In exercising that creativity, Plaintiff's counsel did not persuade the court, but her failure to do so was not sanctionable.

In this court's view, however, counsel did cross the Rule 11 line after the court dismissed the Second Amended Complaint. The court itself flagged Rule 11's requirements in its order granting leave to file yet another amended complaint. *Douglas*, 2020 WL 1469439, at *11. Plaintiff filed the Third Amended Complaint a few weeks later. Although counsel made scattered changes to this pleading, this new submission (the fourth complaint filed in this case) did not appear to acknowledge the court's earlier opinion. In another set of safe-harbor letters, the Defendants accurately pointed out that Plaintiff's excessive-force claim still ran squarely into *Heck*. As the court then explained in its second opinion, Plaintiff's "conviction is inconsistent with the claims he continues to make, that he 'never . . . came close to any of the officers,' that 'there were no officers behind or in front of his vehicle' when he attempted to escape, and that he 'was not driving at or in . . . [the] direction [of]" the officer." *Douglas*, 2021 WL 979156, at *5 (quoting Third Am. Compl. ¶¶ 17–18). Given that the court had just found the Second Amended Complaint to be *Heck*-barred, a reasonable attorney would have recognized that such allegations were groundless as a matter of law.

8

After the dismissal of the Second Amended Complaint, a reasonable attorney might have carefully retailored their factual allegations to avoid the *Heck* bar; they might have presented a "nonfrivolous argument for extending, modifying, or reversing existing law," FED. R. CIV. P. 11(b)(2). Had counsel firmly believed the court erred in its analysis of the Second Amended Complaint, they might have asked the court to enter judgment, thus permitting a prompt appeal-- or they might have opted to withdraw their claims entirely. Plaintiff's counsel did none of those things, and now offers no persuasive responses to Defendants' Rule 11 motions. Counsel claims to have conducted reasonable due diligence, argues that Plaintiff's claims are meritorious, and asserts that discovery would have confirmed this.[4] But counsel does not justify the decision to repeat allegations that this court had already firmly rejected as a matter of law. Counsel instead raises the standard defense that she was merely acting as a zealous advocate, but ignores a central lesson taught in a case she cites herself: "If a competent attorney would find no basis for a legal argument, then it does not interfere with zealous advocacy to penalize the repetitious assertion of that argument." *In re TCI Ltd.*, 769 F.2d 441, 447 (7th Cir. 1985). The court thus finds that counsel violated Rule 11(b)(2) in filing the Third Amended Complaint. Because these errors were ones of law, not of fact, the court declines to impose any sanction against Plaintiff himself. *See* FED. R. CIV. P. 11(c)(5)(A).

Plaintiff's counsel has not raised a procedural defense to these motions, but the court notes briefly that Defendants have satisfied Rule 11's two main procedural requirements. *See*

---

[4] In her Rule 11 papers, Plaintiff's counsel frequently mentions the need for discovery to substantiate her client's claims. (*See* Pl. and His Counsel's Resp. in Opp. to Palatine Defs.' Mot. at 1 ("He was no[t] even given the opportunity to fully develop his claim."); *id.* at 2 (asserting that the court "should have allowed discovery to proceed"); *id.* at 4 (noting that Plaintiff "was never given the opportunity to conduct discovery"); Pl.'s Memo. in Opp. to Palatine Defs.' Mot. at 6 (complaining that Plaintiff was "never afforded the ability" to pursue his claim through discovery).) As a reminder, the court did not dismiss the complaints for lack of evidentiary support; it dismissed them for failures of law. The court has never expressed any view on whether there may be evidence that contradicts the state judge's findings, or whether discovery in this case would have turned up such evidence. *Heck* may, in fact, have left open a door for viable civil claims, but Plaintiff never found that opening. Instead, he stood on claims that are squarely inconsistent with the facts that support his state convictions. Until and unless those convictions are overturned, his claims are barred. Extensive discovery would not alter that.

*Corley v. Rosewood Care Ctr., Inc.*, 142 F.3d 1041, 1058 (7th Cir. 1998); FED. R. CIV. P. 11(c)(2). Defendants made this request in a standalone motion that seeks only sanctions, and they gave Plaintiff's counsel far more than the necessary "twenty-one day safe harbor in which to withdraw or correct the allegedly offending filing." *Corley*, 142 F.3d at 1058; *see also* FED. R. CIV. P. 11(c)(2). The Seventh Circuit (alone among the courts of appeals) applies a "substantial compliance" standard to Rule 11's safe-harbor requirement. *See N. Ill. Telecom.*, 850 F.3d at 882 (citing *Nisenbaum v. Milwaukee County*, 333 F.3d 804, 808 (7th Cir. 2003)). Although the rule appears to require service of a *motion* on the other party, *see* FED. R. CIV. P. 11(c)(2), in the Seventh Circuit a movant may proceed by serving "a *letter* informing the opposing party of the intent to seek sanctions and the basis for the imposition of sanctions." *Matrix IV, Inc. v. Am. Nat. Bank & Tr. Co. of Chicago*, 649 F.3d 539, 552 (7th Cir. 2011) (emphasis added). The court finds that Defendants substantially complied with Rule 11's safe-harbor requirement. In response to the Third Amended Complaint, Defendants unambiguously warned Plaintiff's counsel of possible Rule 11 motions. Even if those letters did not preview, verbatim, the motions that Defendants would ultimately file, the letters were sufficiently clear about why Douglas's position could not be squared with either his criminal convictions or this court's first opinion. Plaintiff's counsel was put on notice that she may have violated Rule 11 by filing the Third Amended Complaint, and she was given an ample opportunity to withdraw it.

## **CONCLUSION**

For the reasons stated above, Defendants' motions for sanctions [105, 106, 107] are denied with respect to Plaintiff Douglas but granted in part with respect to his attorney. The circumstances here would support an order requiring Plaintiff's counsel to reimburse Defendants for fees incurred in defending this matter since May 11, 2020, the filing date of Plaintiff's Third Amended Complaint. The court declines to enter such an order, but will instead sanction Plaintiff's counsel in the amount of $1,000.00. The amount shall be paid within 45 days--$500 to each of the two municipalities

presumably responsible for the defense costs in this case. The court retains jurisdiction to enforce this order.

                                        ENTER:

Dated: February 15, 2022

                                      _____
                                      REBECCA R. PALLMEYER
                                      United States District Judge